[S.F. No. 23457. Nov. 30, 1976.]

WILLIE BARBER, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent.

COUNSEL

Loren E. McMaster for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Talmadge R. Jones and Robert L. Mukai, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**CLARK, J.**—Plaintiff appeals from a judgment denying petition for writ of mandate to compel the State Personnel Board (board) to reinstate him as a civil service employee and to award back pay from the date of dismissal.

Plaintiff was employed by the California Youth Authority as a counselor at the O. H. Close School for Boys. In March 1972, a wristwatch was stolen from one of the wards at the school. In April plaintiff approached one of his supervisors and asked what kind of action would be taken if the watch were returned. The supervisor then demanded that plaintiff tell him what he knew about the watch. At this point, plaintiff produced the watch from his pocket and explained he had obtained it that morning from a recently paroled ward.

On 24 April 1972, the school superintendent ordered plaintiff to disclose how the watch came into his possession. Plaintiff refused. Subsequently, on 1 May 1972, plaintiff told the superintendent he obtained the watch from a recently paroled ward outside the ward's house at 8 a.m. on 13 April. Plaintiff also informed the superintendent the watch had been discussed during two telephone conversations with the ward a few days before 13 April when the ward phoned plaintiff and when plaintiff phoned the ward.

Plaintiff's version of how he came into possession of the watch was flatly contradicted by the ward. The ward conceded he had telephoned plaintiff but testified the watch was not discussed during this conversation and denied that plaintiff called him. The ward also denied giving plaintiff the watch and stated that he was asleep at 8 a.m. on 13 April and did not see plaintiff on that date or any day that week. The ward's testimony was corroborated by an adult visitor at the ward's home. The

visitor testified the ward was asleep at 8 a.m. on 13 April and that he did not see the plaintiff anywhere around the ward's home on that date. A written record of plaintiff's telephone calls indicated that plaintiff did not phone the ward's home any time between 3 April and 14 April.

On 24 April plaintiff was notified he had been placed on leave of absence effective the same day for 15 days pending investigation of accusations against him. On 16 May 1972, plaintiff was notified he was dismissed as counselor. The dismissal was based on plaintiff's alleged insubordination (§ 19572, subd. (e)),[1] dishonesty (§ 19572, subd. (f)), willful disobedience (§ 19572, subd. (o)), and lack of good behavior of such a nature as to discredit the agency. (§ 19572, subd. (t).) This notice contained a detailed statement of facts upon which dismissal was based and informed plaintiff of his right to a hearing before the board.

On 22 January 1973, after a hearing, the board's hearing officer issued a proposed decision and findings of fact. The proposed decision recommended plaintiff's dismissal be sustained without modification. The hearing officer found that plaintiff's explanation of how he came into possession of the watch was false and that his refusal to disclose to the superintendent information concerning the watch constituted willful disobedience. The board adopted the hearing officer's findings of fact and proposed decision without modification on 24 January 1973.

Plaintiff then petitioned the superior court for a writ of administrative mandate. (Code Civ. Proc., § 1094.5.) The petition alleged the disciplinary action violated plaintiff's right to due process because punitive measures were imposed prior to the time plaintiff was afforded a hearing, because the decision was not supported by substantial evidence, and because the punishment imposed was disproportionate to the wrong committed. The trial court denied the petition.

On 16 September 1975, after the date of the trial court's decision in the present case, this court held the procedures by which permanent civil service employees were disciplined violated the due process clause of the Fourteenth Amendment and article I, sections 7 and 15 of the California Constitution. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].) Specifically, we held that Government Code section 19574 did not embody the due process requirements that an employee be given notice of the charges, the reasons therefor,

---

[1]All statutory references are to the Government Code.

and an opportunity to respond prior to the imposition of discipline. (*Id.* at p. 215.) Under these circumstances, the issue presented is the retroactive effect of our decision in *Skelly.*

RETROACTIVITY

■ As a general rule a decision of a court overruling a prior decision or invalidating a statute will be given full retroactive effect. (*County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680]; *Cummings* v. *Morez* (1974) 42 Cal.App.3d 66 [116 Cal.Rptr. 586].) Exceptions to this general rule are recognized when considerations of fairness and public policy preclude full retroactivity. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 850 [126 Cal.Rptr. 633, 544 P.2d 561]; *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 800-801 [87 Cal.Rptr. 839, 471 P.2d 487]; cf. *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226].) ■ Two factors of primary importance in resolving the issue of retroactivity are the extent to which the change in the law was foreshadowed and foreseeable and the extent of the reliance placed upon the former rule of law. (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 850; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 193 [98 Cal.Rptr. 837, 491 P.2d 421].)

This court's decision in *Skelly* was predicated on the United States Supreme Court's decision in *Arnett* v. *Kennedy* (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633]. (15 Cal.3d at pp. 207, 211, 215.) In *Arnett,* the Supreme Court addressed itself to a due process challenge to the federal statutory scheme for disciplining permanent government employees. The high court, in a decision contained in five opinions, for the first time held permanent civil service employees possess a property interest protected by the due process clause in their employment positions. (*Id.* at p. 167 [40 L.Ed.2d at pp. 40-41] (conc. opn., Justice Powell); *id.* at p. 185 [40 L.Ed.2d at p. 51] (conc. & dis. opn., Justice White); *id.* at p. 203 [40 L.Ed.2d at p. 61] (dis. opn., Justice Douglas); *id.* at p. 211 [40 L.Ed.2d at p. 66] (dis. opn., Justice Marshall); *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 207.) Having concluded a property right was in issue, a majority of the Supreme Court found the federal statutory scheme there being reviewed did comport with the requirements of due process because it provided for a 30-day advance notice of the reasons for discharge and an opportunity to respond. (416 U.S. at pp. 153-155 [40 L.Ed.2d at pp. 32-34] (Justice Rehnquist); *id.* at p. 170 [40 L.Ed.2d at p. 42] (conc. opn., Justice Powell); *id.* at pp. 195-196 [40 L.Ed.2d at pp. 56-57] (conc. & dis. opn., Justice White).)

As evidenced by the above discussion of the decision in *Arnett,* the question whether a permanent civil service employee possesses a right to due process in disciplinary proceedings was far from settled prior to the *Arnett* ruling. Further, the nature and extent of the procedural safeguards required were also unsettled before *Arnett.* Thus, prior to the high court's decision, the change in the law effected by this court's decision in *Skelly* was not realistically foreseeable. After the Supreme Court's *Arnett* ruling, however, the change was clearly foreseeable; in fact, the change was mandated by the high court's ruling.

Fairness and public policy considerations concerning the retroactivity of the change presents a closer issue. Shortly after our decision in *Skelly* the board adopted a resolution stating that our decision was not retroactive and that a retroactive application would cost the state hundreds of thousands of dollars in back pay to employees who were properly discharged. Accordingly, the board decided to apply the due process principles enunciated by this court only to punitive actions becoming effective after 15 October 1975. Several considerations support the board's determination. Prior to *Skelly,* the statutory procedures had withstood legal challenges to their validity, including a due process challenge. (*Gilmore* v. *Personnel Board* (1958) 161 Cal.App.2d 439, 450-452 [326 P.2d 874].) Further, because a wrongfully disciplined employee has always been entitled to compensation for the period of wrongful punitive action (§ 19584), retroactive application will benefit only those persons adjudged at the substantive hearing to have been properly disciplined.

The board's resolution, however, appears to have overestimated the cost to the state flowing from a retroactive application. Our decision in *Skelly* did not impose a requirement that full evidentiary hearings be held prior to imposition of discipline. Rather, we held that due process required preremoval safeguards of "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (15 Cal.3d at p. 215.) The statutes, at all relevant times, afforded the employee a substantive hearing if the employee filed a written answer to the notice of punitive action within 20 days of service. (§ 19575.) Thus, retroactive application would not require the board to hold hearings for all persons disciplined prior to *Skelly.* In *Skelly* itself, we recognized this fact when we held that the board did not have to institute new proceedings because petitioner there had, at that time, already been afforded a full evi-

dentiary hearing. (15 Cal.3d at p. 220, fn. 34.) The fact that new hearings are not required diminishes the financial effect of holding *Skelly* retroactive.

The cost is also mitigated by the damages recoverable for a *Skelly* violation. The remedy for the employee in these cases is to award back pay for the period of wrongful discipline. (*Keely* v. *State Personnel Board* (1975) 53 Cal.App.3d 88, 98 [125 Cal.Rptr. 398]; *Kristal* v. *State Personnel Bd.* (1975) 50 Cal.App.3d 230, 241 [123 Cal.Rptr. 512].) Thus, damages consist only of back pay for the period discipline was improperly imposed, i.e., from the date of actual discipline to the time discipline was validated by the hearing. Under the statutes, this time period is relatively short. The statutes give the employee a right to written notice of the reasons within 15 days of the punitive action (§ 19574), an opportunity to respond within a maximum of 20 days thereafter (§ 19575), and a full hearing within a reasonable time after the time to respond. (§ 19578.) The total time period for measuring the damages to be awarded therefore comprises only two to three months.

Finally, the cost to the board is minimized by the small number of litigants that would benefit from holding *Skelly* retroactive. Virtually all of the litigation involving this issue has become final. Under section 19575 all those proceedings in which the employee either did not answer the accusations or withdrew the answer are final. Further, all proceedings in which the employee seeks compensation as damages—those involving costs to the board—are barred unless the employee sought review within 90 days of the date the board's decision became final. (§ 19630.) The number of cases affected by retroactively applying *Skelly* is thus very small.

For the above reasons, we conclude the unfairness to the board resulting from a retroactive application of our decision in *Skelly* is insufficient to overcome the application of the general rule. Our decision in *Skelly* is therefore applicable to all pending cases where the dismissals are not yet final.

MEASUREMENT OF DAMAGES

 The Courts of Appeal are divided on the issue of the manner in which back pay due an employee is measured. In *Keely* v. *State Personnel Board, supra,* 53 Cal.App.3d 88, 98, the court held that the amount of back pay due is to be measured from the date of actual dismissal to the date the evidentiary hearing was held. In *Kristal* v. *State*

Personnel Bd., supra, 50 Cal.App.3d 230, 235, 241, the court affirmed a decision of the trial court holding that the proper measuring time is from the date of actual discipline to the date the board's decision became final. The board suggests the correct termination date should be the date on which the employee could reasonably have been expected to make a responsive showing to the charges against him.

The constitutional infirmity of the disciplinary procedures used in the present case was the imposition of discipline prior to affording the employee notice of the reasons for the punitive action and an opportunity to respond. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 215.) This infirmity is not corrected until the employee has been given an opportunity to present his arguments to the authority *initially* imposing discipline. (*Id.*) Under the procedures applied to plaintiff, the constitutional vice existed until the time the board rendered its decision. Prior to that time, the discipline imposed was invalid. The board's argument that we should measure damages terminating at the time the employee could reasonably have responded cannot be accepted. The due process right to respond exists only if response is permitted to be made, and therefore must be available for consideration prior to rendering the disciplinary decision. As noted, at the time plaintiff was permitted to file an answer, the discipline imposed on him was invalid. The proper period for measuring the amount of back pay due therefore begins at the time discipline is actually imposed and ends on the date the board files its decision.

STATUTORY CONSTRUCTION

The board requests this court to construe section 19574 so as to avoid its unconstitutionality. Specifically, the board asks that we mechanically sever certain portions of the statute. Such construction is unnecessary.

The constitutional weakness of the civil service procedures formerly employed derived primarily from what the statutes omitted, not from their express terms. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 215.) Thus, the provisions in the statutes may still be applied *provided* the minimum due process requirements enunciated by this court in *Skelly* are fully satisfied. In this regard, we note the board has promulgated a rule incorporating the due process requirements stated in *Skelly*. (Cal. Admin. Code, tit. 2, § 61.)

## SUFFICIENCY OF EVIDENCE

■ Plaintiff's contention the evidence is insufficient to support the board's decision is without merit. Decisions of the board will be upheld if they are supported by substantial evidence. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 217, fn. 31; *Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573, 577 [103 Cal.Rptr. 306].)

As noted above, plaintiff's version of how he came into possession of the watch is directly contradicted by corroborated evidence in the record. Thus, there is substantial evidence to support the findings that plaintiff was dishonest concerning how he came into possession of the watch and was willfully disobedient in refusing to respond to the directives of the superintendent.

## SEVERITY OF PUNISHMENT

■ Plaintiff's argument the punishment imposed is so severe as to constitute an abuse of discretion is also without merit. ■ The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 217; *Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816].) Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed. (*Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 515 [102 Cal.Rptr. 758, 498 P.2d 1006].)

■ Plaintiff was employed as a counselor at a correctional institution for youthful offenders. The record supports the board's conclusion plaintiff willfully disobeyed orders of his superior and attempted to explain his possession of the watch by implicating a paroled ward. Plaintiff's explanation was seriously undermined by the evidence presented. In view of the fact plaintiff was employed at a custodial institution and the strong governmental interest in maintaining high standards of public service and conduct, it cannot be said as a matter of law that the punishment imposed constitutes an abuse of discretion.

## CONCLUSION

We conclude *Skelly* is retroactive to those few cases not final. The period for measuring damage terminates on the date the board's decision

is filed. ▮▮▮ To the limited extent the Court of Appeal decisions in *Keely* and *Kristal* suggests a termination date for measuring damage contrary to the views expressed herein, they are disapproved.

Insofar as the judgment denies petitioner damage from the time of actual dismissal to the date the board's decision was filed, it is reversed. In all other respects, the judgment is affirmed. The parties shall bear their respective costs on appeal.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.