[Civ. No. 24915. Fourth Dist., Div. One. May 9, 1984.]

DONALD E. KEMPLAND, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

COUNSEL

Sterling Hutcheson, James K. Smith, Edward M. Healey, John A. Finley, Gray, Cary, Ames & Frye, Christopher L. Ashcroft and Thistle, Krinsky, Idler & Lambert for Plaintiff and Appellant.

Donald L. Reidhaar, Milton H. Gordon, Susan Amatean, Fred Takemiya and Susan M. Thomas for Defendants and Respondents.

OPINION

**STANIFORTH, J.**—Plaintiff Donald E. Kempland appeals a judgment of the superior court denying his petition for writ of mandate. Kempland contends he was deprived of due process (specifically, a fair hearing) before

his dismissal from employment at the University of California (University) and he in fact filed a timely grievance of his discharge. We conclude Kempland was not afforded requisite preremoval due process, his discharge is void, and he is entitled to an award of backpay.

## FACTUAL BACKGROUND

Kempland, a career half-time recording technician at the San Diego campus of the University, was directed on September 6, 1979, to attend a meeting with Dr. Schane, his department chairman. Kempland received a letter of warning and supplemental performance evaluation, stating he would be dismissed if he continued to spend the major part of his work day in activities not directly related to his job. Kempland failed to report to work September 21, 24 and 25, 1979. On September 26, 1979, Kempland arrived at the department, only to be notified of his dismissal and asked to return his department keys. That same day Schane prepared and mailed an official notice of intention to dismiss Kempland.

Kempland appeared at the department on September 27, 1979, accompanied by a union representative and reviewed his personnel file which contained a copy of the notice of intent to dismiss. Kempland received the original September 26 notice with attachments on October 1, 1979. On that day Kempland's representative wrote to Kempland's department chairman requesting a meeting to allow Kempland to respond to the notice. The next day, October 2, 1979, at the University's insistence, a meeting was held. It was the University's position Kempland must respond to the notice by October 2, 1979. Kempland's union representative suggests by affidavit that at the October 2 meeting, University personnel refused to discuss "specific acts or specific examples of improper conduct which would support the allegations and charges against Mr. Kempland resulting in his discharge." Kempland told the University he did not consider the meeting an appropriate opportunity to respond to the charges against him and he would respond as fully as possible to the charges in writing within the five days permitted. Kempland responded in writing on October 5, 1979.

On October 3, 1979, Schane sent a notice of dismissal which was received by Kempland on October 5, 1979; the dismissal was to be effective October 13, 1979. Kempland's October 5 response to his dismissal, consisting of two letters addressed to Schane, stated his belief the October 3 notice of dismissal was in violation of University policies because it was written before Kempland's time for response to the intent to dismiss letter had elapsed. Kempland also asserted the University did not have reasonable grounds for his dismissal, provided a detailed refutation of the charges against him and

requested reconsideration of the University's action. Kempland suggested the October 2 meeting did not afford him a meaningful opportunity to respond to the charges against him, as it was held only one day after he received the dismissal notice, and because of the University's "refusal at that time to resolve the matter informally or even to discuss [its] allegations directly with [him] . . . ." These letters were delivered to Schane on October 5, 1979.

On November 8, 1979, Kempland, through his counsel, mailed an official grievance form signed and dated October 22, 1979, protesting his dismissal. It was received by the University on November 9, 1979. The grievance was denied for lack of timeliness. The denial of the grievance was upheld by the assistant vice chancellor as well as the office of academic and staff personnel relations.

On September 15, 1980, Kempland filed a petition for writ of mandate to set aside his discharge effective October 13, 1979, and restore all wages, benefits, rights and privileges of his employment with interest at a legal rate; on February 11, 1981, the superior court made findings of facts and conclusions of law; on May 27, 1981, the court rendered judgment denying petition for writ of mandate. Kempland appeals.

### Discussion

### I

■ It is not disputed Kempland possesses a property interest in his position of employment with the University. Kempland therefore is entitled to due process before discharge.

The United States Supreme Court in *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701], held public employees must be afforded preremoval due process to safeguard their property interests in employment. ■ *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], sets out what constitutes requisite preremoval minimal due process: "[D]ue process does mandate that the employee be accorded certain procedural rights before the discipline becomes effective. As a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.*, at p. 215.)

■  The University did not afford Kempland preremoval minimal due process as required by constitutional provisions and by University staff personnel policies implementing these provisions. The September 26 letter written by Schane and received by Kempland on October 1 constituted a notice of proposed action in announcing the University's intention to dismiss Kempland. The letter stated the reason for dismissal was Kempland's failure to maintain work performance standards and attached copies of materials constituting a detailed criticism of Kempland's work habits, unauthorized absences, and pursuit of personal business on University time using University time and resources. The letter also stated: "You have the right to respond to me orally or in writing within five (5) calendar days following receipt of this letter. After your response or after the above five (5) days, whichever is sooner, you shall be notified of my decision." Schane's letter, including its attachments, complied with the preremoval safeguards established in *Skelly*. On October 1, 1979, the day he received the notice, Kempland exercised his right to respond by requesting a meeting with Schane.

In considering whether the meeting arranged by the University provided a meaningful opportunity to respond to the notice, we first note the University insisted it take place just one day after Kempland received the notice.[1] We question whether Kempland had sufficient time to prepare a defense to the charges. We also note the allegations of Kempland and Kempland's union representative the meeting was pro forma—they suggest the University refused to discuss the charges, compelling Kempland to write a detailed refutation of the charges in his October 5 letters. Additionally, we consider Kempland's verbal notice to the University that he would respond to the charges in writing by October 5, 1979 (within the five-day period for response to the notice received Oct. 1, 1979). The notice of dismissal, nonetheless, is dated October 3, 1979. It is clear the University sent notice of dismissal without Kempland's response, one day after the meeting and only two days before the expected answers to the charges made in the September 26 letter.

Staff personnel policy section 740.5 states: "A written notice shall be given to a regular status employee of intention to dismiss. The notice shall (1) state the reason for the intended dismissal; (2) include a copy of the charges and materials upon which the intention to dismiss is based; and (3) state that the employee has the right to respond either orally or in writing within five calendar days." Kempland's written response was received within the time limit set out under section 740.5 and discussed in the notice of

---

[1]The University incorrectly concluded Kempland need respond by October 2, 1979, in order for his response to be timely. Schane's letter specifically states "You have the right to respond to me orally or in writing *within five (5) calendar days following receipt of this letter*." (Italics ours.) Kempland received the letter October 1, 1979.

intention to dismiss,[2] but it was not considered; the department chairman had already dismissed him.

Kempland properly exercised his right to respond in writing to the dismissal notice; the University's failure to afford him a meaningful opportunity to respond orally, and to consider his written response denied Kempland preremoval due process required by *Skelly*. While the trial court found: "In dismissing [Kempland] from employment by [the University] [the University] followed its personnel policies and procedures applicable to [Kempland]," our review of the record leads to the conclusion substantial evidence does not support this finding. The University only "went through the motions" with regard to Kempland's dismissal and did so rather ineptly. Kempland's dismissal is therefore null and void. (*Mendoza* v. *Regents of University of California* (1978) 78 Cal.App.3d 168, 173 [144 Cal.Rptr. 117].)

II

■ The Supreme Court decision in *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306], governs our determination of the amount of backpay to which Kempland is entitled. As *Barber* noted: "The constitutional infirmity of the disciplinary procedures . . . was the imposition of discipline prior to affording the employee . . . an opportunity to respond. (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 215.) This infirmity is not corrected until the employee has been given an opportunity to present his arguments to the authority *initially* imposing discipline. (*Id.*)" (*Barber, supra,* at p. 403.) *Barber* held on its facts, "[T]he constitutional vice existed until the time the board rendered its decision. Prior to that time, the discipline imposed was invalid." (*Ibid.*) *Barber* therefore awarded backpay from the date of discharge to the date of the board's final decision.

Here, the University's refusal to process Kempland's grievance has resulted in his never having the opportunity to present his argument against dismissal to the discipline-imposing authority. ■ Without considering whether in fact Kempland's October 5, 1979, letters constituted a grievance under sections 280.9 and 280.11 of the University staff personnel policy, such that his grievance was in fact timely, we conclude the University inappropriately determined Kempland had waived his right to "grieve" his dismissal.

---

[2]While the notice of intention to dismiss informed Kempland he would be notified of Schane's final decision after Kempland's oral *or* written response or after five days following receipt of the notice, *whichever was sooner,* Kempland was entitled to consideration of his written response to the notice as well, because the University-arranged meeting did not allow Kempland a sufficient oral response.

*Keating* v. *Superior Court* (1982) 31 Cal.3d 584 [183 Cal.Rptr. 360, 645 P.2d 1192], *reversed in part on other grounds sub nom. Southland Corp.* v. *Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852], enumerates three relevant factors in establishing waiver of a limitations period: whether the party seeking arbitration has "previously taken steps inconsistent with an intent to invoke arbitration"; "has unreasonably delayed" in seeking arbitration; or has acted in "bad faith" or with "wilful misconduct." (*Id.* at p. 605.) The court further stressed the significance of the presence or absence of prejudice. Here, Kempland displayed no intention to waive his right to a hearing after discharge. His letters of October 5, 1979, and his preparation of a signed form entitled "Grievance" on October 22, 1979, reflected an intention to proceed to a hearing. Applying the *Keating* factors, Kempland took no steps inconsistent with the intent to invoke arbitration, delay was not unreasonable, i.e., did not work prejudice to the University, and there is no indicia of bad faith or wilful misconduct. Thus, in the absence of waiver, the University should have processed Kempland's grievance. The recent case of *Sucec* v. *Regents of the University of California* (1982) 129 Cal.App.3d 39 [180 Cal.Rptr. 679], is inapplicable because, among other reasons, the trial court in *Sucec* found the plaintiff had waived her right to a hearing.

■■■ The University's failure to afford Kempland a full evidentiary hearing upon discharge means the constitutional infirmity of the University's disciplinary procedures has not yet been corrected. Kempland is therefore entitled to backpay from October 13, 1979, the effective date of discharge to the date on which he is given a meaningful opportunity to respond to Schane's notice of intention to dismiss, when the constitutional infirmity will in fact be corrected, less interim wages earned. (*Barber, supra,* 18 Cal.3d 395.) Contrary to the University's assertion, *Mitchell* v. *State Personnel Board* (1979) 90 Cal.App.3d 808 [153 Cal.Rptr. 552], mandates no different result. *Mitchell* did hold an employee must take advantage of available opportunities to have the discipline amended or revoked in order to be entitled under *Barber* to backpay for the entire period from dismissal to correction of the constitutional infirmity by a final decision. In *Mitchell,* however, plaintiff failed to attend a full-fledged hearing offered by the employer and was deemed to have waived the opportunity to respond to the authority initially imposing discipline. Here, in contrast, Kempland—as we have determined—did not waive the opportunity to so respond; he was denied it.

## DISPOSITION

The judgment is reversed. The trial court is instructed to issue a writ of mandate directing Kempland's reinstatement and retain jurisdiction to enter

a backpay award in conformity with this opinion; the University must also provide Kempland requisite preremoval due process.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied May 29, 1984, and respondents' petition for a hearing by the Supreme Court was denied August 9, 1984.