[No. A098067. First Dist., Div. Five. July 22, 2004.]

ROBERT ROE, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant;
DEPARTMENT OF JUSTICE, Real Party in Interest and Appellant.

[No. A098624. First Dist., Div. Five. July 22, 2004.]

ROBERT ROE, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant;
DEPARTMENT OF JUSTICE, Real Party in Interest and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and IV.

## COUNSEL

Bill Lockyer, Attorney General, Pamela Smith-Steward, Chief Assistant Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Lyn Harlan and Karen L. Donald, Deputy Attorneys General, for Real Party in Interest and Appellant and for Real Party in Interest and Respondent.

Patton Wolan & Boxer, Roger W. Patton; Steven B. Bassoff; Garfinkle Law Office, Maria J. Garfinkle and Gary Garfinkle for Plaintiff and Respondent and for Plaintiff and Appellant.

## OPINION

**GEMELLO, J.**—Does a state employee's resignation following his termination without due process cut off his remedies for the procedurally improper termination? If not, to what backpay is the employee entitled due to the procedurally improper termination? Is the employee entitled to reinstatement, or must the matter be remanded to the State Personnel Board (Personnel Board or Board) for a determination of the merits of the employer's charges of misconduct?

In this case, we conclude that the Personnel Board erred in determining that Deputy Attorney General Robert Roe, who was terminated without due process, resigned effective September 24, 1992, and in limiting Roe's backpay award accordingly. Roe is entitled to backpay through May 5, 1999, the date of the Personnel Board's decision after hearings on the merits of the

Department of Justice's charges against Roe. In an unpublished portion of this decision we conclude that this matter must be remanded to the Personnel Board to determine whether there was good cause to terminate Roe based on the evidence already heard.

FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 1992, the Department of Justice mailed Robert Roe a notice of adverse action[1] dismissing him for cause from his position as a Deputy Attorney General effective August 31, 1992. The Department charged Roe with dishonesty, willful disobedience, misuse of state property, and general failure of qualifications and good behavior. The charges stemmed from Roe's alleged unauthorized removal of two computer printers from the offices of the Attorney General.

*Roe's Letter of Resignation*

On August 31, Roe's counsel, Roger Patton, met with Assistant Attorney General George Williamson, the Department *Skelly* officer,[2] and proposed various resolutions short of dismissal; he told Williamson that the Department had not given Roe adequate notice of termination. During the subsequent few weeks, Patton suggested resolutions involving Roe resigning at a later date. Williamson was not receptive. Patton and Williamson scheduled the *Skelly* hearing for September 24 at 2:00 p.m. Patton testified that Williamson warned him on September 23 that for Roe to avoid discipline he would have to submit his resignation by the 24th. Williamson testified that he did not recall such a conversation, but his testimony was discredited by the Personnel Board.

On September 24, 1992, at 11:14 a.m., about three hours before the scheduled *Skelly* hearing, Patton faxed Williamson a letter of resignation signed by Roe, which stated "I hereby resign from my position as a deputy attorney general effective today at 5:00 p.m." Patton's cover letter stated in part, "Enclosed is [Roe's] letter of resignation from his position as Deputy Attorney General. Our understanding is that this terminates the employment

---

[1] Government Code section 19570 defines "adverse action" to mean "dismissal, demotion, suspension, or other disciplinary action."
 Unless otherwise indicated, all further statutory references are to the Government Code.

[2] The term refers to the individual authorized to hear the response of a permanent employee to proposed adverse employment action, pursuant to *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].

relationship and any pending disciplinary proceeding. [Citation.]" The Department never responded. In November, when Roe asked his union representative to inquire about his backpay and benefits, he learned for the first time that the Department took the position that he was terminated on August 31, 1992.

### Personnel Board Proceedings

On December 23, 1992, the Department filed an amended notice of adverse action with the Personnel Board, changing the effective date of the adverse action from August 31 to September 24, 1992. Roe filed an answer to the amended notice, asserting that he resigned September 24 pursuant to an agreement with the Department. In response, the Department tried to withdraw its amended notice, on the new theory that the Board was without jurisdiction because Roe's termination had actually become final on September 14, twenty days after service of the original notice.[3] The Personnel Board adopted the administrative law judge's (ALJ) proposed decision, which concluded that the Board did not have jurisdiction to consider the matter because Roe had not timely appealed his termination.

### First Writ of Mandate Proceedings

Roe petitioned for a writ of mandate directing the Department to vacate the August 31, 1992, dismissal and reinstate him. The superior court granted the petition and found (1) that the Personnel Board erred in denying jurisdiction; and (2) that Roe had been terminated without due process. The court directed the Department to set aside the dismissal and to reinstate him.

On appeal, this court concluded that the Personnel Board had jurisdiction to decide Roe's appeal on the merits. (*Roe v. State Personnel Board* (Jan. 15, 1998, A075617) [nonpub. opn.] (*Roe I*).) The superior court had reached the same conclusion and to that extent we affirmed the superior court judgment. This court also concluded that the superior court erred by deciding the question of whether Roe was denied pretermination due process instead of remanding to the Personnel Board for further proceedings and to that extent reversed the lower court judgment. We directed the superior court to enter a new judgment granting the petition for writ of mandate and remanding the matter to the Personnel Board with instructions to hear Roe's appeal.[4]

---

[3] Under the version of section 19575 then in effect, Roe had 20 days from service of the notice to file an answer with the Personnel Board.

[4] In a second appeal, this court subsequently held that Roe was entitled to attorney fees and costs for litigating the *Roe I* mandamus proceeding. (*Roe v. State Personnel Bd.* (Aug. 16, 2000, A086674) [nonpub. opn.] (*Roe II*).)

On remand, an ALJ for the Personnel Board conducted hearings and admitted evidence regarding the underlying claims of misconduct, Roe's termination, and subsequent events. In its proposed decision, the ALJ found that the August 31 termination was invalid because Roe was not provided adequate notice and that Roe resigned effective September 24. The proposed decision awarded Roe backpay for the period September 1 through 24, 1992. The Personnel Board adopted the proposed decision at its meeting on May 4 and 5, 1999.

*Second Writ of Mandate Proceedings*

Roe filed another petition for writ of mandate challenging the finding that he resigned effective September 24 and the resulting award of limited backpay. The superior court granted the petition on December 4, 2001. The court rejected the Personnel Board's conclusion that Roe's resignation was effective, reasoning that as of the date of Roe's resignation, the Department itself maintained the position that Roe had been terminated on August 31. The Personnel Board's "determination that Roe resigned his position effective September 24, 1992, is not supported by substantial evidence since, as of the time of the purported resignation, [the Department was] of the belief that Roe's employment had been terminated on August 31, 1992."

On March 1, 2002, the superior court issued a writ of mandate directing the Personnel Board to vacate its decision and "enter a new order reinstating Roe, and awarding Roe backpay, with interest, and benefits, for the period September 1, 1992, through April 30, 1999, less interim wages earned. (See *Barber v. State Personnel Board* (1976) 18 Cal.3d 395, 403 [134 Cal.Rptr. 206, 556 P.2d 306] (*Barber*); *Kempland v. Regents of the University of California* (1984) 155 Cal.App.3d 644, 651 [202 Cal.Rptr. 275] (*Kempland*).) Said writ of mandate shall also direct that [the Personnel Board] retain jurisdiction and provide Roe requisite preremoval due process. (*Kempland*, *supra*, 155 Cal.App.3d at 651–652.)"

Both parties appeal. The Department assigns error to the superior court issuance of the writ directing the State Personnel Board to order the reinstatement of Roe with backpay from September 1, 1992, through April 30, 1999. The Department argues that Roe resigned effective September 24, 1992, and is not entitled to reinstatement or backpay after that date. Roe cross-appeals, contending that his entitlement to backpay continued after April 30, 1999, the date of the ALJ's proposed decision.

## DISCUSSION

### I. Standard of Review*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. Roe's Resignation Following His Termination Did Not Extinguish His Right to Backpay for the Department's Violation of Due Process

The first question we address is whether Roe's resignation following his termination without due process extinguished his right to backpay for the illegal termination. The Personnel Board answered this question in the affirmative by concluding that because Roe resigned on September 24, 1992, he is not entitled to backpay after that date. The superior court vacated that portion of the Board's determination as not supported by substantial evidence "since, as of the time of the purported resignation, [the Department was] of the belief that Roe's employment had been terminated on August 31, 1992."

█ The Department contends that the superior court erred because the evidence plainly demonstrates that Roe resigned effective September 24, 1992. That is beside the point. There is no factual dispute that on September 24 Roe faxed a resignation letter to the Department's *Skelly* officer, effective that same day.[6] The issue before us is whether the Personnel Board erred in concluding that Roe's resignation cuts off an award of backpay after September 24 for the due process violation. This is a question of law which we review de novo. (*Bostean, (1998)* 63 Cal.App.4th 95, 107 [73 Cal.Rptr.2d 523].) If the Personnel Board erred, it was an abuse of discretion, a ground for the issuance of a writ of mandate. (*Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 305 [58 Cal.Rptr.2d 721]; Code Civ. Proc., § 1094.5, subd. (b).)

█ The Department contends that under section 19996.1 of the Government Code, Roe's resignation resulted in a permanent separation without right to reinstatement because he did not petition to set aside the resignation

---

*See footnote, *ante*, page 1029.

[6] The *Skelly* officer turned the letter over to the government law section of the Department to handle. According to the Personnel Board, "Williamson believed that [Roe] was either terminated or on administrative leave at that point. Williamson was not aware whether an employee could resign during the *Skelly* period." Roe believed that he had resigned, and he only learned in November from his union representative "that the Department took the position that he was dismissed on August 31, 1992."

within 30 days.[7] We disagree. As Roe argues, *Lucas v. State of California* (1997) 58 Cal.App.4th 744 [68 Cal.Rptr.2d 253] (*Lucas*) provides guidance. Under *Lucas*, section 19996.1 is inapplicable, because Roe was separated from civil service by the termination for cause effective August 31, not by his subsequent resignation.

In *Lucas*, a state civil service employee was terminated for cause and appealed to the Personnel Board. (*Lucas, supra,* 58 Cal.App.4th at p. 745.) While awaiting his hearing before the Board, Lucas applied for and obtained service retirement. (*Id.* at p. 747.) The state then withdrew its disciplinary action against Lucas. Lucas sought reinstatement. (*Ibid.*) The state refused to reinstate him and Lucas appealed to the Personnel Board, which claimed lack of jurisdiction. (*Ibid.*) Lucas sought a writ of mandate ordering the state to set aside his retirement and reinstate him. (*Id.* at pp. 748–749.) Lucas alleged that his termination was procedurally flawed because he was not afforded a pretermination hearing. (*Id.* at p. 748.) The superior court sustained the state's demurrer without leave to amend because, inter alia, Lucas did not seek reinstatement within 30 days as prescribed by section 19996.1. (*Lucas,* at p. 749.)

The Fourth District reversed. At the outset, the court defined the issue before it as whether Lucas's retirement "extinguished" his right to be reinstated once the state withdrew the termination. (*Lucas, supra,* 58 Cal.App.4th at p. 750.) The court answered that question in the negative. The court rejected the state's arguments that section 19996.1 and another provision, section 19140, barred reinstatement.[8] Both sections 19996.1 and 19140 relate to reinstatements following resignations and retirements, *not* reinstatements following terminations of permanent employees for cause. Because Lucas was separated from service by the termination for cause, *not* by his service retirement, neither statute barred reinstatement. (*Lucas,* at pp. 750–751 ["Lucas sought and obtained service retirement benefits only after he was already separated from service by removal for cause (involuntary termination)"].) In other words, because Lucas only retired in light of his

---

[7] Section 19996.1, subdivision (a) provides in relevant part: "No resignation shall be set aside on the ground that it was given or obtained pursuant to or by reason of mistake, fraud, duress, undue influence or that for any other reason it was not the free, voluntary and binding act of the person resigning, unless a petition to set it aside is filed with the department within 30 days after the last date upon which services to the state are rendered or the date the resignation is tendered to the appointing power, whichever is later."

[8] Section 19140, subdivision (a), gives the state discretion to reinstate employees who have been separated from civil service by resignation or retirement, but not permanent employees who have been terminated for cause. In provides in relevant part: "an appointing power may, in his or her discretion, reinstate any person having probationary or permanent status who was separated from his or her position (1) by resignation, (2) by service retirement, (3) by termination from limited-term, temporary, career executive assignment, or exempt appointment, (4) under Section 19996.2, or (5) without a break in continuity of state service to accept another civil service or exempt appointment."

separation from service by termination, the procedures applicable to reinstatement after separation from service by retirement did not apply. This was true even though his termination may have been invalid for lack of due process. (*Id.* at p. 750.) Similarly, Roe only resigned following his separation from service by termination; in other words, Roe only resigned because of his dismissal. Section 19996.1 is not a bar to reinstatement.

We reject the Department's argument that *Lucas* turns on the fact that the employee retired rather than resigned. A close reading of *Lucas* reveals that although the court did point out that the Government Code distinguishes between service retirement and resignation and that Lucas did not resign (*Lucas, supra,* 58 Cal.App.4th at pp. 750–751), the court's holding did not turn on that distinction. That distinction would have provided a basis to conclude that section 19996.1 was inapplicable because that section only bars reinstatements after resignations. That distinction would *not*, however, have provided a basis to conclude that section 19140 was inapplicable because that section applies to reinstatements following both resignations *and* retirements. Despite the court's emphasis on the difference between resignation and retirement, the court's holding that *both* statutes were inapplicable turned on its conclusion that it was the termination, rather than the retirement, that separated Lucas from service.[9]

The Department also cites *Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102 [278 Cal.Rptr. 346, 805 P.2d 300] (*Coleman*) and *Pyne v. Meese* (1985) 172 Cal.App.3d 392 [218 Cal.Rptr. 87], for the proposition that a resignation extinguishes any right to challenge procedural errors occurring in the course of a dismissal. Neither case supports such a proposition. *Pyne v. Meese* considered due process rights in the context of the seizure of vehicles for failure to pay registration fees; it does not provide any guidance on the issues in our case. *Coleman* considered the process due to an employee whose extended unexcused absence was treated as an "automatic resignation" under section 19996.2 (the "AWOL" statute). (*Coleman*, at p. 1108.) The *Coleman* court did not address the effect of a resignation following a termination for cause; to the contrary, the court noted that under the AWOL statute "it is the employee who severs the employment relationship, not the state." (*Coleman*, at p. 1115; see also *Pasquinelli v. State of California* (1975) 45 Cal.App.3d 457, 462 [119 Cal.Rptr. 438] [petitioner "indulged in no waiver, but acted in response to the demand of his employer, who erroneously directed termination of his salaried status"].)

---

[9] The Department also purports to quote language from *Lucas, supra,* 58 Cal.App.4th 744 to the effect that "if [Lucas] had resigned he had abandoned both his right to challenge procedural errors in his dismissal and any right to reinstatement." That language appears nowhere in the *Lucas* decision.

Finally, in support of its position that the Personnel Board correctly concluded that Roe's resignation extinguished his entitlement to remedies for the improper discharge, the Department argues that Roe's resignation was effective on September 24 without any need for acceptance and that its failure to expressly accept or reject Roe's resignation is of no consequence. Underlying the Department's argument is the assumption that once the August 31, 1992, termination was invalidated, Roe's September 24, 1992, resignation became operative and controlling. This assumption fails to recognize the core principle of *Lucas*: an employee's retirement after involuntary termination does not bar reinstatement. Although the August 31 termination was not legally valid, it was *in effect* at the time Roe submitted his resignation. Indeed, the termination was in effect until May 1999, when the Personnel Board set aside the dismissal due to the *Skelly* violation. (See *Skelly, supra*, 15 Cal.3d at p. 219 [recognizing that the dismissal of petitioner was actually imposed and in effect, although improper under the constitutional guarantee of due process]; *Barber, supra*, 18 Cal.3d at pp. 402–403 [same]; see also § 19574.) It was the August 31 termination that effected Roe's "separat[ion] from the state civil service," in the language of section 19996. The Personnel Board erred as a matter of law in concluding that Roe's September 24 resignation extinguished his right to backpay and/or reinstatement after that date.

III. *Due to the Procedurally Improper Termination, Roe Is Entitled to Backpay Through the Date of the Second Personnel Board Decision*

■ It is undisputed that the termination of Roe effective August 31, 1992, was in violation of Roe's right to due process. (*Skelly, supra*, 15 Cal.3d 194.) An employee terminated without being afforded *Skelly* procedural protections is entitled to an award of backpay from the date of dismissal until the date of correction of the constitutional infirmity. (*Barber, supra*, 18 Cal.3d at p. 403.) The Department argues that backpay must be limited to the period September 1 through 24, 1992; or, at the latest, February 2, 1994. It contends either that the *Skelly* violation was waived on September 24, 1992, or that it was remedied when the Personnel Board filed its first decision on February 2, 1994. Roe argues that he has a right to backpay from September 1, 1992, to the present. Roe contends that the *Skelly* violation still has not been remedied because the Personnel Board has never upheld his dismissal on the merits. We reject both of these positions and conclude that the *Skelly* violation was corrected when the Personnel Board issued its second decision; thus, Roe is entitled to backpay through May 5, 1999.[10]

---

[10] The superior court awarded backpay through April 30, 1999, the date of issuance of the ALJ's proposed decision. Under *Barber*, the date of the *Personnel Board's* decision is controlling. (*Barber, supra*, 18 Cal.3d at p. 403.) In this case, the Board adopted the ALJ's

██ The California civil service employment scheme confers upon permanent employees "a property interest in the continuation of [their] employment which is protected by due process." (*Skelly, supra,* 15 Cal.3d at p. 206.) In particular, employees are entitled to procedural safeguards prior to dismissal, including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215.)

In *Barber,* the Supreme Court considered how to measure damages for a *Skelly* violation. In *Barber,* the plaintiff was dismissed without being provided an opportunity to address the allegations of misconduct; following a hearing, the Personnel Board sustained the dismissal. (*Barber, supra,* 18 Cal.3d at p. 399.) The Court noted that "[t]he constitutional infirmity of the disciplinary procedures used in the present case was the imposition of discipline prior to affording the employee notice of the reasons for the punitive action and an opportunity to respond. [Citation.] This infirmity is not corrected until the employee has been given an opportunity to present his arguments to the authority *initially* imposing discipline. [Citation.] Under the procedures applied to plaintiff, the constitutional vice existed until the time the board rendered its decision. Prior to that time, the discipline imposed was invalid." (*Id.* at p. 403.) Therefore, "[t]he proper period for measuring the amount of back pay due . . . begins at the time discipline is actually imposed and ends on the date the board files its decision." (*Ibid.*)

The Department contends that Roe is not entitled to any backpay after September 24, 1992, because he had an opportunity to respond to the accusations of misconduct at the *Skelly* hearing scheduled for that date but instead opted to resign. The Department relies on *Mitchell v. State Personnel Bd.* (1979) 90 Cal.App.3d 808 [153 Cal.Rptr. 552] (*Mitchell*), which held that the plaintiff waived any right to backpay for his dismissal in violation of *Skelly* because he failed to take advantage of an opportunity provided by his employer for an immediate postdismissal hearing. (*Mitchell,* at pp. 811, 813–814.) *Mitchell* is inapposite. Here, Roe tendered his resignation with the understanding that the Department would accept the resignation instead of a dismissal and that all disciplinary proceedings would be terminated. The Department's attempt to claim that Roe waived the *Skelly* violation by failing to appear at the September 24 hearing, even though the Department induced Roe's absence by leading him to believe his resignation would end the dismissal proceedings, is unpersuasive.

---

decision at its meeting on May 4 and 5, 1999. We use the later of those two dates to fix the backpay award.

Moreover, in *Barber,* the California Supreme Court rejected the argument that backpay ceases to accumulate "at the time the employee could reasonably have responded." (*Barber, supra,* 18 Cal.3d at p. 403.) The Court explained, "[t]he due process right to respond exists only if response is permitted to be made, and therefore must be available for consideration prior to rendering the disciplinary decision. As noted, at the time plaintiff was permitted to file an answer, the discipline imposed on him was invalid." (*Ibid.*) Similarly, in this case, as of September 24 the Department had already dismissed Roe in violation of *Skelly.*

Equally unavailing is the Department's contention that under *Coleman v. Department of Personnel Administration Services, supra,* 52 Cal.3d 1102, Roe is not entitled to backpay because his resignation manifested his unequivocal intent not to return to work. In *Coleman,* the Supreme Court concluded that an employee who was deemed to have resigned after an extended absence without leave was not entitled to backpay because "Coleman had not been reporting to work, and gave no indication he intended to return to work, when the state determined that he had resigned under the AWOL statute. Because he was not working, he lost no wages from the state's failure to give him prior notice or an opportunity to respond." (*Id.* at p. 1124.) The *Coleman* Court contrasted its facts to those in *Barber,* where "the employee had worked until being discharged, and presumably would have continued to do so." (*Coleman,* at p. 1124.) The instant case is like *Barber:* Roe's service was separated by his termination not his subsequent resignation.

The Department argues to limit backpay by its contention that the *Skelly* violation was cured for purposes of calculating backpay upon the filing of the first Personnel Board decision on February 2, 1994. In support of that argument, the Department cites *Ng v. State Personnel Bd.* (1977) 68 Cal.App.3d 600 [137 Cal.Rptr. 387] (*Ng*), for the proposition that in cases where the Personnel Board issues two decisions, the date of the first decision is the relevant date for calculating backpay. *Ng* does not support any such absolute rule. In *Ng,* the plaintiff appealed his demotion to the Personnel Board, which found the demotion justified. (*Id.* at pp. 603–604.) On the employee's petition for writ of mandate, the superior court ruled that the Personnel Board improperly adopted the decision of its hearing officer without referring to the reporter's transcript. (*Id.* at p. 604.) On remand, the Personnel Board reviewed the transcript and upheld its original decision. (*Ibid.*) On review of the second decision, the court upheld the demotion but concluded that the plaintiff had been demoted without due process. (*Id.* at pp. 605–606.) Citing *Barber,* the court held that the plaintiff was entitled to backpay from the date of demotion until the date of the *first* Personnel Board decision. (*Ng,* at p. 608.) "Although the first of [the two Personnel Board] decisions was nullified, it represented the fulfillment of plaintiff's right to

respond to the accusation; thus it establishes the date when the needs of procedural due process were satisfied." (*Ibid.*) *Ng* simply follows *Barber* in concluding that the entitlement for backpay ceases upon the employee having an opportunity to be heard.

In contrast, Roe was not given an opportunity to be heard on the merits of the dismissal before the first Personnel Board decision because the Board only took evidence on the jurisdictional issue. The Department represents that Roe responded to the accusations of misconduct during the first proceeding, but the decision reflects that the Board did not receive any evidence or consider any argument on the merits. Therefore, the first hearing and decision did not cut off Roe's entitlement to backpay because it did not cure the Department's failure to provide Roe an opportunity to be heard on the merits.

██ Roe contends that only a Personnel Board decision upholding his dismissal can cut off his entitlement to backpay. We disagree. Although in both *Barber, supra,* 18 Cal.3d 395, and *Kempland, supra,* 155 Cal.App.3d 644, the Personnel Board decisions upheld the dismissals at issue, the key to curing the *Skelly* violation is providing the employee an opportunity to respond to the accusations, not the nature of the eventual decision. The *Skelly* procedures guarantee an opportunity to be heard so as to " 'minimize the risk of error in the initial removal decision' "; *Skelly* does not guarantee the propriety of the ultimate decision. (*Skelly, supra,* 15 Cal.3d at p. 215.) The *Barber* court reiterates the rule that the constitutional infirmity is the imposition of discipline without notice and an opportunity to respond, and the infirmity is corrected when the employee has been given an opportunity to present his arguments and the Personnel Board renders a decision. (*Barber, supra,* 18 Cal.3d at p. 403.) In the second hearing in this case, the Board did not need to reach the merits because it concluded that Roe had resigned. ██ Nevertheless, once the Board issued that decision, Roe was no longer subject to dismissal without due process. Instead, he was subject to a Board decision rendered after a full and fair hearing on the merits. The conclusion that Roe effectively resigned was in error, but it was not in violation of Roe's *Skelly* rights. For the *Skelly* violation, Roe is entitled to backpay for the period September 1, 1992, through May 5, 1999, the date the Personnel Board adopted the ALJ's proposed decision.

IV. *This Matter Must Be Remanded to the Personnel Board for a Determination of the Merits of the Department's Charges of Misconduct*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[*]See footnote, *ante,* page 1029.

## DISPOSITION

The superior court judgment granting the petition for writ of mandate is affirmed in part and reversed in part. The superior court is directed to enter a new judgment granting the petition for writ of mandate and remanding this matter to the Personnel Board for the following limited purposes. The superior court shall direct the board to conduct proceedings to determine the amount of backpay due Roe for the *Skelly* violation for the period September 1, 1992, through May 5, 1999, and to award it forthwith. Further, as the Board has already heard the evidence on the merits, the superior court shall direct the Board to exercise its discretion and make a finding whether Roe's dismissal was for good cause. Each party is to bear their own costs on appeal.

Jones, P. J., and Simons, J., concurred.

A petition for a rehearing was denied August 20, 2004, and the nonpublished portion of the opinion was modified.