Filed 9/24/14  McGie v. Super. Ct. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

|  |  |
|---|---|
| NANCY McGIE, | C074901 |
| Plaintiff and Respondent, | (Super. Ct. No. 10CV00791) |
| v. | |
| GLENN COUNTY SUPERIOR COURT, | |
| Defendant and Appellant. | |

The Trial Court Employment Protection and Governance Act (Gov. Code § 71600 et seq.) requires each trial court to "establish a trial court employment protection system that shall become the minimum employment protection system for all trial court employees and shall become part of the sole trial court employee personnel system." (Gov. Code, § 71650, subd. (a).)  Such a system must include (among other things) "a process for conducting an evidentiary due process hearing to review disciplinary decisions that by law require an evidentiary due process hearing."  (*Id.*, § 71653.)

1

At the times pertinent to this case, the personnel manual for the Glenn County Superior Court (the court) provided that "[a]ll employees are subject to the Trial Court Employment Protection and Governance Act (Government Code section 71600 and following) except those employees who are employed 'at will'. The Court has the right to terminate the employment of an 'at will' employee at any time and for any reason not prohibited by law."

When the court terminated the employment of plaintiff Nancy McGie without providing her with an evidentiary due process hearing, McGie brought this mandate proceeding to compel the court to provide her with both a due process hearing and an award of back pay until she received that hearing. Following a jury determination that McGie was not an at-will employee, Yolo County Superior Court Judge Daniel Maguire granted McGie the relief she sought.[1]

On appeal, the court contends Judge Maguire did not have the authority to make an award of back pay here or, in the alternative, erred in not limiting the extent of the award. Finding no merit in the court's arguments, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Beginning in February 2007, McGie was employed by the court as the court's family law facilitator and as the managing attorney for the court's self-help assistance referral program (SHARP). On September 28, 2009, McGie was summarily dismissed from her position without prior notice, apparently based on the court's belief that she was doing private legal work on court time. McGie requested an evidentiary hearing and the other rights provided to trial court employees under Government Code section 71650 et

---

[1]   Hereafter, we will refer to Judge Maguire, rather than the court, as the adjudicator of this proceeding to avoid confusion with the court (Glenn County Superior Court) that is a party to this proceeding.

seq.,**2** but the court refused, presumably based on its later asserted position that McGie was employed at will and therefore not entitled to any statutory due process rights.

In February 2010, McGie commenced the present proceeding by filing a petition for a traditional writ of mandate to compel the court to provide her with her statutory due process rights. McGie also sought to compel the court to pay her full salary and benefits from the day she was terminated until such time as the court provided her with those rights. McGie took the position that she was entitled to those rights as a permanent employee of the court.

In March 2010, the court's attorney communicated to McGie's attorney that the court was agreeable to providing McGie with a due process hearing to obviate the need for the mandamus proceeding. On July 2, 2010, the court's attorney sent a letter purporting to memorialize the agreements the parties had reached in this regard. Specifically, the court's attorney stated that the parties agreed to arbitrate the propriety of the court's termination of McGie's employment,**3** McGie was going to dismiss her mandamus petition, and McGie would not raise any other procedural objections with respect to her termination. After noting these agreements, the court's attorney wrote that

---

**2**      For ease of reference, we will refer to these rights as statutory due process rights.

**3**      Such arbitration was consistent with the procedures set out in the court's personnel manual, which provided that "if disciplinary action is imposed, [the employee] may appeal such action to a qualified arbitrator in accordance with Government Code Section 71653 b through f." Indeed, the letter specified that "the use of the arbitral process will serve as the exclusive method of resolution of this dispute as if [McGie] was entitled to a Due Process hearing as a non-At Will employee of the court."

In his letter, the court's attorney also set forth a "Notice of the Charges" on which the termination of McGie's employment was based. Therein it was asserted that McGie was fired for "doing legal work as a private attorney preparing and filing conservatorship cases for Far Northern Legal Services, on Court time, and while supposedly performing services as an employee for the Court."

3

"[t]he court reserves the right to present to the arbitrator the issue of whether Ms. McGie was an at will employee in the first instance and if the [arbitrator] finds that she is not, proceed to the issue of good cause [for the termination]."

McGie's attorney objected to having the arbitrator decide if McGie was an at-will employee and insisted that if the court did not drop this point, McGie would simply proceed with her mandamus petition. Thereafter, on July 6, 2010, the court's attorney sent a new letter to McGie's attorney memorializing the parties' agreements. This new letter did *not* include the line about the arbitrator deciding whether McGie was an at-will employee.

Based on the parties' agreements, McGie dismissed her mandamus petition with prejudice later in July 2010. A year after that, on July 6, 2011, the parties finally met for the arbitration. The court's attorney told the arbitrator that the issues to be arbitrated included whether McGie was employed at will. McGie's attorney disagreed. The court's attorney tried to justify his position by reference to his July 6 letter, even though that letter did *not* provide for arbitration of McGie's employment status. Ultimately, the arbitrator determined the arbitration could not go forward since there was no agreement as to the issues to be arbitrated.

In August 2011, McGie moved to set aside the voluntary dismissal of this mandamus proceeding. Both judges on the Glenn County Superior Court recused themselves, and the case was assigned to Judge Maguire. Thereafter, in September 2011, the parties stipulated to set aside the dismissal.

The court filed its answer to McGie's petition in November 2011. At a status conference in April 2012, Judge Maguire set a hearing on the merits of the petition for August following the submission of evidence and points and authorities.

In September 2012, after Judge Maguire took the matter under submission following the August hearing, Judge Maguire decided to order a jury trial on the disputed

4

factual issue of "whether the parties . . . had an actual understanding on whether McGie was an at-will employee, and if so, what that understanding was."

A three-day jury trial was held in March 2013. The jury found that McGie was not an at-will employee. Subsequently, Judge Maguire ordered both parties to submit briefs on the provisions that should be included in the writ of mandate. McGie proposed that the writ should order the court to provide her with: (1) an evidentiary due process hearing to contest the charges against her; and (2) back pay and benefits from September 29, 2009, until a decision was rendered in the due process hearing.

In its brief on the form of the writ, the court argued that McGie's right to back pay should be cut off as of July 6, 2011 -- the day of the aborted arbitration hearing -- because McGie "effectively failed to proceed to arbitration as scheduled on" that date. The court argued that by "abandoning that arbitration, [McGie] waived her right to further back pay." The court further argued (without citing any authority) that "[t]hese back pay issues can only be resolved after an arbitrator determines if there was good cause to terminate" McGie.

In reply, McGie asserted that the arbitration was not aborted because she "abandoned" it, but because the court insisted on arbitrating whether McGie was an at-will employee, "which was not the agreement between the parties, and the arbitrator would not hear the matter because there was no agreement on the issue(s) to be arbitrated." McGie contended she was "entitled to back salary benefits from the date of her dismissal at 10% interest, less mitigation, until [the court] provides her with a due process evidentiary hearing."

On June 6, 2013, Judge Maguire entered an order after hearing finding "that, in accordance with the documentary evidence, there was no agreement or understanding that the issue of at-will employment would be a subject of arbitration." Accordingly, there was "no legal or factual basis to terminate [McGie]'s back-pay as of the date of that failed arbitration" and McGie was "entitled to back pay and benefits from the date of

5

termination to the date of decision in the just cause hearing." The order after hearing indicated that Judge Maguire would "issue a writ of mandate in conformity with this decision." Judge Maguire apparently issued the writ that same day, although no copy of the writ appears in the record on appeal.

Subsequently, on July 22, 2013, Judge Maguire entered judgment granting McGie's mandamus petition.[4] Notice of entry of judgment was served on August 5, and the court timely appealed from the judgment.

DISCUSSION

I

*Judge Maguire Had The Authority To Order An Award Of Back Pay To McGie*

On appeal, the court first makes an argument that it did not make in front of Judge Maguire, asserting that Judge Maguire did not have the statutory authority to order an award of back pay for McGie. In making this assertion, however, the court relies on the *wrong* statute, citing section 1094.5 of the Code of Civil Procedure, which applies in

---

[4]     A week *before* Judge Maguire entered judgment, the court filed a return to the writ in which it asserted that it had "chosen to comply with the [w]rit." If the court did, in fact, comply with the writ, then it waived any right to appeal the judgment or order directing issuance of the writ. (*Los Angeles Internat. Charter High School v. Los Angeles Unified School Dist.* (2012) 209 Cal.App.4th 1348, 1354 ["When the trial court issues its judgment granting a peremptory writ, the respondent has two choices: to appeal that judgment or to comply with it. If the respondent elects to comply with the writ, it waives its right to appeal from the judgment granting the writ petition"].) From the terms of the return, however, it does not appear that the court had, in fact, complied with the writ because nothing in the return indicates that the court had paid McGie any back pay; instead, the return simply indicated that the court's attorney had "approved [the] judgment for back pay and benefits to be paid to" McGie.

Because it is not clear from the record whether the court did, in fact, comply with the writ, and because McGie has not argued that the court waived its right to appeal by filing a return that asserted the court had "chosen to comply with the [w]rit," we decline to find any such waiver and instead proceed to determine the court's appeal on its merits.

6

cases of *administrative* mandate, "[w]here the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." (Code Civ. Proc., § 1094.5, subd. (a).) Here, McGie did not seek a writ of administrative mandate -- as she might have done if the court had given her the evidentiary due process hearing to which she was entitled, the arbitrator had upheld her termination, and she had wanted to seek judicial review of that decision. Instead, McGie sought a traditional writ of mandate under Code of Civil Procedure section 1085 to compel the court to provide her with an evidentiary due process hearing in the first place, plus an award of back pay.

In light of this fact, the pertinent question here is whether Judge Maguire had the authority under Code of Civil Procedure section 1085 to make a back pay award. The court addresses this question in its reply brief, contending that Judge Maguire did not have that authority because "[r]eviewing the underlying facts [and] equitable considerations . . . in determining what, if any, award [McGie] is entitled to, are necessarily exercises of discretion that cannot be compelled by traditional mandate." In other words, the court contends that the question of whether McGie is entitled to any back pay is a matter committed to the discretion of the arbitrator in the evidentiary due process hearing, and Judge Maguire usurped that discretion by ordering a back pay award in this proceeding.

The court is wrong. It is true that a writ of mandate may not issue unless the subject "has refused to perform a clear duty, unmixed with discretionary power or the exercise of judgment." (*Taliaferro v. Locke* (1960) 182 Cal.App.2d 752, 755.) Under the facts of this case, however, McGie's right to an award of back pay was not subject to the exercise of any judgment or discretion by the court or by the arbitrator in the evidentiary

7

due process hearing. Accordingly, Judge Maguire had the authority to make that award under Code of Civil Procedure section 1085.

Just like its assertion before Judge Maguire that "back pay issues can only be resolved after an arbitrator determines if there was good cause to terminate" McGie, the court's assertions on appeal evidence a fundamental misunderstanding of the law in this area. It has long been the rule that a permanent civil service employee is entitled, as a matter of due process, to "notice of the charges [against her], the reasons therefor, and an opportunity to respond prior to the imposition of discipline." (*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 399-400 (*Barber*).) It has also long been the rule that when such an employee is denied those rights, "[t]he remedy for the employee . . . is to award back pay for the period of wrongful discipline." (*Id.* at p. 402.) Such an award does *not* depend on whether the employee ultimately prevails in overturning the discipline imposed; in other words, it does not depend on the employee securing the right to reinstatement. On the contrary, even if the termination of the employee's employment is ultimately upheld following an evidentiary due process hearing, the employee is nonetheless entitled to an award of back pay for the period during which the discipline was constitutionally invalid because the public entity employer did not provide the employee with his or her constitutional rights prior to imposing discipline.

That this is true is readily apparent from the facts in *Barber*. There, a counselor with the California Youth Authority was dismissed from his employment in May 1972 for insubordination, dishonesty, willful disobedience, and lack of good behavior. (*Barber*, *supra*, 18 Cal.3d at pp. 398-399.) The notice of dismissal "contained a detailed statement of facts upon which dismissal was based and informed [the] plaintiff of his right to a hearing" before the State Personnel Board. (*Id.* at p. 399.) In January 1973, a hearing officer recommended that the plaintiff's dismissal be sustained without modification and the State Personnel Board adopted that recommendation without modification. (*Ibid.*)

8

The employee petitioned the superior court for a writ of administrative mandate, alleging "the disciplinary action violated [his] right to due process because punitive measures were imposed prior to the time [he] was afforded a hearing, because the decision was not supported by substantial evidence, and because the punishment imposed was disproportionate to the wrong committed. The trial court denied the petition." (*Barber*, *supra*, 18 Cal.3d at p. 399.)

On review, the California Supreme Court determined that its decision in *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 applied retroactively to the employee's case. (*Barber*, *supra*, 18 Cal.3d at p. 402.) In *Skelly*, the court "did not impose a requirement that full evidentiary hearings be held prior to imposition of discipline. Rather, [the court] held that due process required preremoval safeguards of 'notice of the proposed action, the reasons therefore, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline.' " (*Barber*, *supra*, 18 Cal.3d at p. 401.) The court held that the employee in *Barber* had been denied his due process rights because discipline was imposed "prior to affording the employee notice of the reasons for the punitive action and an opportunity to respond." (*Id.* at p. 403.) The court then continued as follows: "This infirmity is not corrected until the employee has been given an opportunity to present his arguments to the authority *initially* imposing discipline. [Citation.] Under the procedures applied to [the] plaintiff, the constitutional vice existed until the time the board rendered its decision. Prior to that time, the discipline imposed was invalid. The board's argument that we should measure damages terminating at the time the employee could reasonably have responded cannot be accepted. The due process right to respond exists only if response is permitted to be made, and therefore must be available for consideration prior to rendering the disciplinary decision. As noted, at the time plaintiff was permitted to file an answer, the discipline imposed on him was invalid. The prior period for measuring

9

the amount of back pay due therefore begins at the time discipline is actually imposed and ends on the date the board files its decision." (*Ibid.*)

After deciding the period of back pay to which the employee was entitled, the Supreme Court went on to conclude that there was substantial evidence to support the findings that the employee was dishonest and willfully disobedient and to conclude that the discipline imposed on him was not an abuse of discretion. (*Barber*, *supra*, 18. Cal.3d at p. 404.) Accordingly, the court reversed the judgment of the trial court to the extent it denied him back pay from the time of his actual dismissal to the date the State Personnel Board's decision was filed, but affirmed the judgment in all other respects. (*Id.* at p. 405.)

*Barber* makes clear that the questions of whether the employer had a legitimate basis to terminate the employee's employment and whether the employee is entitled to reinstatement are *entirely separate* from the question of whether the employee is entitled to back pay for the period during which the discipline imposed by the employer was constitutionally invalid. *Barber* establishes without caveat that the employee is entitled to "back pay for the period of wrongful discipline" (*Barber*, *supra*, 18 Cal.3d at p. 402), and what makes the discipline "wrongful" has nothing to do with whether the employer had a legitimate basis for terminating the employment; it has to do with whether the employer imposed the discipline *in violation of the employee's constitutional right to due process*.

Here, the fact that the court's termination of McGie's employment was wrongful was conclusively established by the jury's finding that McGie was not an at-will employee. As a result of that finding, it is beyond dispute that McGie was entitled to her statutory due process rights under the terms of the court's personnel manual. It is also beyond dispute that the court denied her those rights. Even if the court shows in the evidentiary due process hearing that it had a legitimate basis for terminating McGie's employment, that will not take away one bit from the fact that the court terminated her

10

employment in violation of her due process rights. Because it has been conclusively established in this proceeding that McGie was subjected to a period of wrongful discipline, under *Barber* she is necessarily entitled to back pay for that period, and the court had a ministerial duty to pay her that pay. The enforcement of such a ministerial duty is beyond question an appropriate subject of a traditional mandamus proceeding like this. (See Code Civ. Proc., § 1085 subd. (a) ["A writ of mandate may be issued . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station"].)

Even if it is true, as the court asserts, that the cases McGie cites all involved plaintiffs who received back pay awards, after they had participated in due process hearings, that fact does not establish that the conduct of a due process hearing is a necessary prerequisite to such an award. Indeed, for the reasons set forth above, such a hearing is not a prerequisite to such an award. As we have explained, once it has been determined that the employee was subjected to a period of wrongful discipline, the basis for an award of back pay has been established, and it is appropriate to order such an award, regardless of whether the employee has yet to receive the due process hearing to which he or she was entitled.

To the extent the court contends that Judge Maguire had no authority to make a back pay award because he did not "review[] any evidence regarding whether [McGie] had unclean hands or if [the court] should have had the right to some sort of equitable setoff in light of the established fact [McGie] was terminated for using [the court]'s resources to benefit her own practice,"[5] that argument is without merit as well. The court

---

[5]    By repeating the court's assertion that this was an "established fact," we do not mean to suggest that we concur with the court's assertion. Even if it could be deemed an "established fact" that the court terminated McGie's employment because the court *believed* that McGie has misused court resources, the question of whether McGie did, in fact, misuse court resources is a matter that has yet to be determined and presumably will

11

does not offer any authority supporting its claim that it is entitled to assert a defense of unclean hands or a right to equitable setoff against any award of back pay to McGie, other than a couple of authorities supporting the general equitable principle that equity does not permit a person to take advantage of his own wrong or fraud. (See Civ. Code, § 3517; *Welch v. Oakland Unified School Dist.* (2001) 91 Cal.App.4th 1421, 1429.) But that principle has no application here. As we have seen, the basis for an award of back pay under *Barber* is to compensate the employee for the period during which the discipline the employer imposed -- the termination of employment -- was constitutionally invalid because it did not comply with principles of due process.

Here, regardless of whether the court had a legitimate basis for terminating McGie's employment, the court and the court alone is responsible for imposing that discipline on McGie *wrongfully*, by terminating her employment before giving her notice of the charges against her and an opportunity to respond to those charges. Even if it is ultimately determined that McGie engaged in misconduct and that misconduct was a proper basis to terminate her employment, there is no basis in the law or logic to hold McGie responsible, either in whole or in part, for the *wrongful manner* in which the court terminated her employment. Thus, there is no basis to limit or deny her award of back pay based on equitable considerations such as unclean hands and the like.

II

*The Award Of Back Pay Until The Date Of The Decision*

*In The Due Process Hearing Was Proper*

The court contends that even if Judge Maguire had authority to award back pay to McGie, the award of back pay until "the date of decision in a future good cause arbitration hearing" was inequitable because "the only reason that [McGie] has never had

be determined in the evidentiary due process hearing that (to our knowledge, on this record) has yet to occur.

a good cause arbitration hearing is because she and her attorney walked out on the original arbitration that the Parties previously stipulated to." The court asserts that "[w]hen [McGie] walked out of the arbitration, she essentially refused to avail herself of her substantive due process rights; thus waiving her right to back pay until the last day she had a right to a pre-dismissal hearing."

This argument contravenes the well-established standard of review on appeal which the court fails to acknowledge. "In reviewing the trial court's ruling on the writ of mandate, this court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] This court, however, may make its own determination when an issue involves resolution of questions of law where the decisive facts are undisputed." (*Bi-Rite Meat & Provisions Co. v. City of Hawaiian Gardens Redevelopment Agency* (2007) 156 Cal.App.4th 1419, 1425.) Here, the question of why the arbitration to which the parties initially agreed in 2010 did not go forward was a disputed question of fact that Judge Maguire resolved in McGie's favor when he found that "there was no agreement or understanding that the issue of at-will employment would be a subject of arbitration" and that there was therefore "no legal or factual basis to terminate [McGie]'s back-pay as of the date of that failed arbitration." Implicitly, Judge Maguire found that -- just as McGie asserted -- the arbitration did not go forward because the court's attorney insisted on arbitrating whether McGie was an at-will employee, even though the parties had not agreed that that issue would be arbitrated. Thus, implicitly at least, Judge Maguire's findings placed the blame for the aborted arbitration proceeding on the court rather than on McGie.

Rather than attempt to argue that there was no substantial evidence to support Judge Maguire's findings in favor of McGie on this issue (because there clearly was such evidence), the court simply ignores altogether both the standard of review and the evidence that supported Judge Maguire's findings and instead insists on asserting again and again and again that McGie "walked out of" the arbitration, citing only its own

13

evidence to support that assertion. Even that evidence did not reasonably support the conclusion that McGie was the reason the arbitration did not go forward.[6] But more importantly, Judge Maguire clearly *rejected* the court's position when he made the findings he did (set out above), and we are bound by those findings because they are supported by substantial evidence. Because the court's finding that the arbitration did not go forward because there was no agreement over the issues to be arbitrated is supported by substantial evidence, there is simply no basis for the court's argument that McGie's right to back pay should have terminated as of the date of the aborted arbitration.

In another argument it did not make in front of Judge Maguire, the court asserts that Judge Maguire should have "limit[ed] the back pay and benefits award to the

---

**6** The evidence the court presented was a declaration by Janelle Bartlett, the Court Executive Officer, who attested that after the court's attorney told the arbitrator that one of the issues to be arbitrated was whether McGie's employment was at-will, McGie's attorney became upset and "walk[ed] out of the room and into the lobby of the hotel" where the arbitration was to take place. Even Bartlett did not assert, however, that this exit put an end to the arbitration. Instead, she acknowledged that she, too, left the room where the arbitration hearing was to be held, and then she cryptically asserted that "[a] few minutes later, we all left," without offering any explanation for *why* everyone departed.

For his part, the court's attorney (Michael Bishop) did not offer any detail about what happened at the arbitration hearing, instead "defer[ring] to [Bartlett's] statements . . . as to what transpired." He did assert, however, that "[a]t no time prior to [McGie and her attorney] leaving the proceedings was there any attempt to negotiate or deal with the conflict in the scope of the issues that w[ere] attempted to be presented to the arbitrator." Note, however, that this assertion implicitly includes the acknowledgment that even Bishop himself did not attempt to "negotiate or deal with the conflict" -- a conflict that *he* created by wrongly asserting that his July 6 letter provided for arbitration of whether McGie was an at-will employee when it plainly did not. Indeed, even in the declaration he filed in opposition to McGie's proposal regarding the form of the writ, nearly three years after the aborted arbitration hearing, Bishop continued to wrongfully insist that his July 6 letter "indicated that we would use the arbitration process as an exclusive method of resolving the dispute as [to whether McGie] was entitled to a due process hearing." As we have shown, the July 6 letter did no such thing.

14

applicable statute of limitations." In support of this argument, the court cites *Jones v. Tracy School Dist.* (1980) 27 Cal.3d 99. That case is entirely inapposite. What was at issue in *Jones* was whether a school district employee "who establishes an unlawful wage discrimination practice which is violative of Labor Code section 1197.5 [is] subject to the two-year limitations period for recovery of back wages." (*Jones*, at p. 102.) The Supreme Court held that "recovery of back wages is ordinarily limited to the two-year period preceding the filing of a complaint for wage discrimination, but under the circumstances herein presented the period may be extended because plaintiff filed a wage discrimination claim in an earlier federal administrative proceeding." (*Ibid.*) The court reached this conclusion based on "the language of the statute taken as a whole, prior interpretations of similarly worded antidiscrimination statutes, and the important policy promoted by the statute of limitations." (*Id.* at p. 103.)

In an argument that spans barely half of a page altogether, the court makes no effort to explain why the rationale of *Jones* ought to apply in the entirely distinct factual setting this case presents. Nor does the court attempt to explain how limiting McGie's award of back pay to whatever period of limitations may have applied to this traditional mandate proceeding[7] would be consistent with the Supreme Court's decision in *Barber*, where the court held that an employee like McGie, who is terminated in violation of her constitutional rights, is entitled to back pay for the "period of wrongful discipline." (*Barber*, *supra*, 18 Cal.3d at p. 402.) For these reasons, the court has shown no lawful

---

[7] The court asserts that under section 1094.6 of the Code of Civil Procedure, McGie "had ninety (90) days from the date her termination became final to file her Petition for Writ of Mandate." That statute is inapplicable here, however, because it governs when a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5 must be filed to challenge a decision by "a local agency, other than a school district" (Code Civ. Proc., § 1094.6, subd. (a)), and as we have explained already, this case is one for *traditional* mandate, not administrative mandate.

15

basis on which Judge Maguire *could* have limited the back pay award, let alone *should* have.

DISPOSITION

The judgment is affirmed.  McGie shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                                    ROBIE            , J.


We concur:


        BLEASE         , Acting P. J.


        MAURO         , J.